McDermott, Appellant, *vs.* Barnum & Moreland, Respondents.

1. The delivery of *a slave,* on a bailment by way of loan, does not subject the property to the debts of the bailee, until possession shall have continued five years under the loan. (R. S. 1845, 527.)

2. A. " delivers personal property to B. and permits him to retain possession of, and use and control it as his own." *Held.* These facts do not amount to fraud in law, but are only evidence of fraud, to be passed upon by a jury.

3. When, under such circumstances, the property is sold under execution as B's, A. is not *estopped* from claiming it as his own.

*Appeal from St. Louis Circuit Court.*

THIS was an action in detinue for a slave named Austin.

John C. Rogers, Hugh Rogers and Lowe, (composing the firm of J. C. Rogers & Co.,) and also the plaintiff, McDermott, were contractors on the James River Canal in Virginia, 1841 and 1842. The former becoming embarrassed, sold various slaves to various creditors, among others, to the plaintiff : a bill of sale for four negroes (among them Austin) for $2000, was made to Rodk. McDermott, and was signed by Jno. C. Rogers & Co., by J. C. Rogers, on the 24th of Jan'y, 1842. Reilly, a witness to the bill, testified that the negroes were present at the sale, were delivered to the plaintiff and went to work for him : he identified the bill of sale, to "Rodk. McDermott," as the one made on that occasion. The negroes remained, working for the plaintiff, about two weeks in Virginia, and until they were sent off in charge of Janney. Janney, then clerk of Rogers & Co., testified that they owed plaintiff for goods to a large amount—over $2000, as he thought ; they agreed to sell plaintiff four negroes, among them Austin, in payment or part payment of the debt. The negroes had been previously taken on attachment, which had been dissolved before that sale. Janney saw the slaves delivered to plaintiff. Afterwards, plaintiff delivered them to Janney to carry to Montgomery, Alabama, to sell, and to remit the proceeds to the plaintiff. When Janney left Virginia, Rogers & Co. were considerably indebted ; they left some property there, but how much, Janney could not say. He took the negroes sold to plaintiff, and also others sold at the same time by Rogers & Co. to McKinney, and carried them to Montgomery county, Alabama, along with some negroes he had also received from that firm as a creditor. Rogers & Co. remained in Virginia when Janney left, but Hugh Rogers overtook him in North Carolina, and they went together to Montgomery. There, Janney sold McKinney's negroes and sent the proceeds to *John C. Rogers in North Carolina*, to be sent to McKinney,

but he does not know that McKinney ever got the money; does not know if McKinney's directions were to send the money to Rogers, but his directions were to remit it. Janney sold some of the negroes of the plaintiff, at Montgomery, and after paying his expenses, put the money in his pocket. Not selling all the negroes at Montgomery, because the prices offered did not suit him, and hoping to get better prices, he sent the rest by *J. C. Rogers to Hugh Rogers* at Mobile, with directions to sell plaintiffs' negroes and remit the proceeds to McDermott. Among them was Austin. Janney never sold Austin to any body. Janney and Hugh Rogers married sisters of Lowe, one of the firm of J. C. Rogers & Co.

Hugh Rogers at Mobile had blooded stock for sale, and with the stock went to New Orleans and thence to St Louis, arriving here 10th of April, 1842; and in Mobile, and on the way, and in St. Louis, Austin attended on the horses. At St. Louis, in 1842 and 1843, Hugh Rogers claimed Austin as his property; hired him out and offered to sell him; he also used him in a stable which he kept. The negro was subsequently, in the fall of 1843, taken on attachment, sold and purchased by Barnum and Moreland. McDermott was pretty well off; was known as Rory or Rod, or Roderick McDermott, and used to sign his name "R. McDermott."

The defendants gave in evidence transcripts of judgments before justices of the peace in St. Louis in 1843, in the cases of John T. Martin *vs*. Hugh Rogers and P. McDonald; and two other cases against Hugh Rogers; also a bill of sale, acknowledged and recorded, of a slave named Austin, to defendants, by constable Rule of St. Louis township, dated 11th of November, 1843, stating that he had seized a negro named Austin, as the property of Hugh Rogers, and in virtue of the execution in Martin *vs*. Rogers & McDonald, had sold him at public sale to the defendants.

To the introduction of this testimony, the plaintiff objected; the objection was overruled and exception taken at the time.

The defendants also introduced in evidence a bill of sale of a negro named Austin, to John C. Rogers by Hugh Rogers, at St. Louis, August 30, 1842 ; and the records of two suits of Childs *vs.* J. C. Rogers & Co. in the St. Louis Court of Common Pleas, for the November term 1842 ; for debts claimed to be due him by that firm. A slave named Austin, and another, were attached in these suits as property of the firm. John C. Rogers interpleading and claiming the negroes, the verdict was, that when attached they were not the property of John C. Rogers. What became of the original suit does not appear.

The defendants also introduced evidence to show, that Hugh Rogers had, in St. Louis in 1842–3, claimed Austin as his slave, hired him out, offered him for sale, and, generally, acted as owner of the slave. .

To the evidence of Schultz, a witness for the defendants, plaintiff objected, and the objection being overruled, excepted.

The verdict was for the defendants. The plaintiff moved for a new trial on the usual grounds ; the motion was overruled, to which the plaintiff excepted and appealed to this court.

The court gave the following instructions for the defendant :

1. Unless it is proved to the satisfaction of the jury, that Rodk. McDermott, named in the writing of the date of January 24, 1842, is the plaintiff and not another person, then said instrument is inoperative to convey to the plaintiff a title in the slave in the declaration mentioned.

2. If the jury find, from the evidence, that the instrument of writing, under which the plaintiff claims, of the date of the 24th of January, 1842, was executed by John C. Rogers, and accepted by the plaintiff, with intent to hinder, delay or defraud the creditors of John C. Rogers & Co., then the said writing is fraudulent and void, as against the creditors of said firm and of the members thereof.

McDermott *v.* Barnum & Moreland.

3. It is not necessary that the fraudulent intent should be proved positively, but if, from all the circumstances, it appears to the satisfaction of the jury that such fraudulent intent existed on the part of the plaintiff, and the vendor or vendors in said bill of sale, at the time of the making thereof, it is sufficient.

4. If the jury find that the plaintiff, by himself or his authorized agent, delivered the slaves in the declaration mentioned to Hugh Rogers, one of the firm of John C. Rogers & Co., and suffered or permitted him to retain the possession of, and use and control the said slave as his own property, that while said Rogers was so in possession of said slave, using and controlling him as his own, he was regularly levied on and sold, to satisfy one or more executions against said Hugh Rogers, that the defendants became the purchasers of said slave at such sale, without any notice of the claim of the plaintiff, the verdict ought to be in favor of the defendants ; but if the delivery was not the act of the plaintiff nor authorized by him, he is unaffected by it or the subsequent possession of Hugh Rogers, unless it appears to the jury from the circumstances, that he had knowledge of the acts of his agent and acquiesced in them.

To the giving of these instructions, the plaintiff by his counsel, objected, but the court overruled his objection, to which the plaintiff at the time excepted.

The court gave the following instructions for the plaintiff :

1. Fraud, in fact, is to be passed upon by the jury. He who attacks a transaction on this ground, must establish it by evidence to the satisfaction of the jury. This may be accomplished by proof direct and positive ; or, as already stated, by the disclosure of such facts and circumstances as in themselves lead to that conclusion. But the jury are not authorized to infer the existence of fraud, unless there be some evidence in the case, rendering such inference reasonable, or from which fraud may be deduced.

2.   As a general rule, a purchaser at a sheriff's or consta-
ble's sale, is not protected in his purchase, if the property he
buys does not belong to the debtor, but to another.   The jury
are referred to the fourth instruction given for the defendants,
to determine the exception to this rule, or under what circum-
stances and conditions, if actually shown to exist, the true
owner of property may, nevertheless, be displaced or be com-
pelled to yield to the claim of a third party shown to have
purchased at such sale, and without knowledge or notice of the
true owner's rights.

3.   If the jury find, from the evidence, that "Rodk." is
but an abbreviation of a name which is used as an alias of or
interchangeably with "Roger," then the jury will regard
the bill of sale in the same light as if the latter never had been
employed.

4.   That although the jury shall believe, that Hugh Rogers
got possession of the negro Austin, in Mobile, Alabama, and
did bring him to this place, and did here represent said negro
as his, and did offer to sell him, or did actually sell him, yet,
if they believe, from the evidence, that the said negro was the
property of the plaintiff at the time he came into the posses-
sion of said Rogers, and that the plaintiff did not give authority
or permit or sanction the acts and doings of said Rogers, in
regard to said negro, then, his right and title to said negro
was in no wise affected or impaired thereby.

The following instructions, asked by the plaintiff, were
refused :

If the jury believe from the evidence, that Roger McDer-
mott, the plaintiff, did, in the year 1842, purchase the negro
Austin, from John C. Rogers & Co., for a valuable considera-
tion, or receive him in payment or part payment of a debt due
said McDermott by Rogers & Co., McDermott's title to the
negro, as between these parties, was good, and he is entitled to
a verdict, unless he has disposed of the negro, by himself or
his duly authorized agent, to the defendants or some other
person.

And if said McDermott, after acquiring said negro from Rogers & Co., sent said negro by his agent to Alabama to be sold for him, in Montgomery or Mobile, and, contrary to the tenor of such agency, he was carried off to New Orleans and St. Louis, the title of McDermott is not lost to him, even against a *bona fide* purchaser for valuable consideration.

One who buys personal property buys at his peril, and he must take care for himself that he purchases of one really having a title or fully authorized to sell, otherwise he will lose the property as against the real owner. And this rule not only holds as to ordinary purchases, but also as to sales by sheriffs and constables.

That even though the jury should believe from the evidence, that the plaintiff had knowledge of the fact that Hugh Rogers had the possession of the boy Austin, and was exercising acts of ownership over him, at St. Louis, and if whilst the said Rogers was so exercising acts of ownership over him, he was sold under execution against said Rogers as his property, and purchased by the defendants without notice of the plaintiff's claim, nevertheless, the plaintiff did not thereby lose his title as against the defendants, unless the plaintiff fraudulently permitted the said Rogers to retain the possession and exercise acts of ownership over the said boy, with the design to enable the said Rogers to obtain a false credit thereby, or practice other frauds by means thereof; and provided, also, that the plaintiff was not present at, and had no knowledge of the sale to the defendants.

*Thos. C. Reynolds,* for appellant.

The fourth instruction given for the defendants is confused, improper, calculated to mislead the jury, and is not law. The principle which may be extracted from it is this : If the plaintiff, or his authorized agent delivered the slave to Hugh Rogers, one of the firm of Rogers & Co., or if it appears to the jury, from the circumstances, that the plaintiff had knowledge of the acts of his agent and acquiesced in them, though the delivery of the slave was neither the act of the plaintiff nor

authorized by him, and suffered or permitted Rogers to retain the possession of, and use and control the said slave as his property, and while so used, the slave was regularly levied on and sold, to satisfy one or more executions against Rogers, and at such sale defendants bought the slave without notice of the plaintiffs' claim ; the verdict ought to be in favor of the defendants.

The instruction is contrary to Revised Statutes, chap. 67, sec. 5, (the R. S. of 1835 contain the same.) The instruction requires that the plaintiff knew of, and acquiesced in the acts of his *agent*, but not those of Rogers. The words " suffer or permit" are too vague ; a jury might easily construe a mere failure or omission to sue, into a permission or suffering of an act which the plaintiff never knew of : the idea, perhaps, intended, could have been better conveyed, had the words " acquiesce in" been used. The words, " use and control as his own property," are liable to the same objection of vagueness. They apply in common parlance to a bailee for hire. In any sense in which they may be taken, the instruction is not law : *Hoare* v. *Parker*, 2 T. R. 376. *Hoffman* v. *Carow*, 2 Wendell, 285. *Saltus* v. *Everett*, 20 Wend. 267. The instruction also leaves out the question of fraudulent intent on the part of the plaintiff in so " suffering and permitting," &c. It excludes also all other questions, the validity of the judgments on which execution was issued, the points raised in other instructions, &c. ; and directs the jury, on the finding of those facts alone, to give a verdict for the defendants. *Morrison* v. *Dent*, 1 Mo. 176.

This instruction also contradicts the fourth instruction given for the plaintiff. It leaves to the jury a law question, i. e., the regularity of levy and sale.

*T. Polk*, for respondent.

The fourth instruction given by the court on the prayer of the respondents, advances a correct principle of law, applicable to this case : because,

*First.* It is reasonable and just.

8—VOL. XVI.

*Secondly*. It is sustained by authority. *Meaux* v. *Caldwell*, 2 Bibb, 244.

*Thirdly*. It is adopted by the plaintiff as his own, by his second instruction, prayed by him and given by the court.

Even in case of real estate, if a person claiming it stands by, while another is about purchasing it, without disclosing his claim, he cannot afterwards be allowed to set up his claim against the purchaser. 2 John. R. 253.

That if one permits another to hold himself out to the world as having not only the possession but the property in chattels and the indicia of title, the other may sell and possess the title thereto. Broom's Legal Maxims, 367. (This work is found in the New Library of Law-Equity.) *Dyer* v. *Pearson*, 3 B. and C. 43, (10 Eng. C. L. R. 15). *Boydon* v. *Coles*, 6 M. and Sel. 23–4.

GAMBLE, Judge, delivered the opinion of the court.

The only ground upon which we reverse the judgment in this case, is, the giving, by the Circuit Court, of the fourth instruction asked by the defendants. That instruction is in these words.:

4. If the jury find that the plaintiff, by himself or his authorized agent, delivered the slave in the declaration mentioned, to Hugh Rogers, one of the firm of John C. Rogers & Co., and suffered or permitted him to retain the possession of, and use and control the said slave as his own property; that, while said Rogers was so in possession of said slave, using and controlling him as his own, he was regularly levied on and sold, to satisfy one or more executions against said Hugh Rogers, that the defendants became the purchasers of said slave at such sale, without any notice of the claim of the plaintiff, the verdict ought to be in favor of the defendants; but if the delivery was not the act of the plaintiff, nor authorized by him, he is unaffected by it or the subsequent possession of Hugh Rogers, unless it appears to the jury from the circumstances, that he had knowledge of the acts of his agent, and acquiesced in them.

McDermott *v*. Barnum & Moreland.

1. This instruction cannot be maintained, on the ground that the plaintiff delivered the slave to Hugh Rogers, on a bailment by way of loan, for such loan does not subject the property to the debts of the bailee, until possession shall have continued five years under the loan. Revised Code, 527.

2. Nor can the instruction be maintained on the ground that the circumstances stated in the instruction establish fraud in the transaction in which the plaintiff acquired the title, which he now asserts ; for, however strong evidence the circumstances may furnish of the fraudulent character of that transaction, they do not render it fraudulent in law, but are to be left to the jury, as evidence from which they may be satisfied that the transaction was, in fact, fraudulent.

3. Nor can this instruction be supported on the ground that the acts of the plaintiff, mentioned in the instruction, estop him from claiming the property, after it was sold as the property of Hugh Rogers ; for the only acts of the plaintiff, which the jury are called upon to find, are, that he delivered the slave to Hugh Rogers, and suffered and permitted him to retain the possession of, and use and control the said slave as his own property. This might be done while Rogers was but a bailee, and while the right to the property was unquestionably in the plaintiff. If the defendants had intended to rely upon an estoppel by the acts of the plaintiff, there must be something more specific than that the plaintiff " suffered and permitted" another " to use and control the slave as his own property."

In every aspect in which this instruction is viewed, it is erroneous, and it is not aided, as the defendants contend, by the reference to it in the second instruction given for the plaintiff. It appears that the instructions for the defendants were first given, and then the plaintiff could do nothing better than endeavor to qualify the error of the court, by asking instructions which would take the law as already declared by the court, and modify it so as to suit his case. By doing this, he did not waive his right to object to the error in the instruction already given for the defendants, and to which he had excepted.

The judgment will be reversed on account of this fourth instruction, with the concurrence of the other Judges, and the cause will be remanded for further proceedings.